**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MICHELE NISCHAN, | ) | |
| | ) | Case No.: 13-cv-50389 |
| Plaintiff, | ) | |
| | ) | Judge: Frederick J. Kapala |
| v. | ) | |
| | ) | Magistrate Judge: Iain D. Johnston |
| STRATOSPHERE QUALITY LLC, | ) | |
| CHRYSLER GROUP LLC, and | ) | Jury Demanded |
| ABBAS SABAH, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO FCA US LLC'S (FORMERLY CHRYSLER GROUP LLC) MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT[1]**

Plaintiff Michele Nischan ("Plaintiff") hereby responds to Defendant FCA US LLC's (f/k/a Chrysler Group LLC) ("FCA") Motion for Summary Judgment and Memorandum in Support ("Motion") as follows:

## Introduction

During Plaintiff's joint employment with Stratosphere Quality LLC ("Stratosphere") and FCA, Plaintiff was subjected to sex discrimination and, at the hands of Abbas Sabah ("Sabah"), egregious sexual harassment. Because of Plaintiff's constant opposition to Sabah's offensive and unwelcome conduct, she was demoted and removed from her jobsite, subsequently resulting in Plaintiff's inability to work. For the reasons stated below, FCA's Motion must be denied.

## Statement of Facts

On approximately June 5, 2012, Plaintiff was hired by Stratosphere to work as a Team Lead, earning $12 per hour. Dkt. 83, ¶ 18; PSOF[2], ¶¶ 1-2. From June 2012 through September 2012, Plaintiff worked on the Cassen's Lot ("Lot") inspecting only FCA vehicles. PSOF, ¶ 4.

---

[1] Unpublished case law is attached hereto as Exhibit 1.
[2] "PSOF" refers to Plaintiff's Additional Statement of Material Facts Pursuant to Local Rule 56.1(b)(3), filed herewith.

Within a few weeks of starting as a Team Lead, Plaintiff began performing the duties of a Project Supervisor, which is more senior than a Team Lead, on the Lot. PSOF, ¶¶ 3, 22. Plaintiff performed the duties of a Project Supervisor prior to receiving a formal promotion on approximately July 5, 2012. *Id.*

Sabah worked on the Lot as well, employed by FCA as a yard manager. PSOF, ¶ 6. In his capacity as yard manager, Sabah supervised Plaintiff's work and provided Plaintiff with instructions as to how to perform her job. *Id.* It was Sabah's responsibility to provide FCA's inspection procedures to Stratosphere and ensure that such procedures were followed on the Lot. Dkt. 86, ¶¶ 45-46; PSOF, ¶ 11. During Plaintiff's employment on the Lot, she was required to inform Sabah if she was going to be late. PSOF, ¶ 12. In addition, Sabah assigned shifts to Plaintiff and trained Plaintiff regarding her work on the Lot. *Id.* Generally, Sabah made changes to the provided work instructions and could instruct that individuals, including Stratosphere employees, be removed from the Lot. *Id.* Sabah could also alter Stratosphere personnel decisions after Stratosphere arrived at an allegedly "final" decision. PSOF, ¶¶ 13-14. Furthermore, Sabah could require that specific members of Stratosphere management be present on the Lot and that multiple Stratosphere supervisors work on the same shift. PSOF, ¶ 13. Stratosphere complied with all of Sabah's requests concerning Stratosphere personnel, and it was Stratosphere's general policy to comply with all such requests. PSOF, ¶¶ 14-15.

Starting the week of June 18, 2012 and continuing through September 2012, Plaintiff was subjected to horrendous sexual harassment by Sabah. PSOF, ¶ 17. While Sabah started routinely staring at Plaintiff's breasts in June 2012 and otherwise making uncomfortable eye contact with Plaintiff, Sabah's conduct escalated to him rubbing his penis against Plaintiff. *Id.* In July and August 2012, Sabah rubbed his penis against Plaintiff's butt or hip approximately

three times per week. *Id.* In one instance, Sabah's penis was erect when he rubbed himself against Plaintiff. *Id.* After being touched with Sabah's erect penis, Plaintiff ran away from Sabah crying. PSOF, ¶ 20. Stratosphere's Operations Manager Jim Harris ("Harris") and Project Supervisor Michelle Blackman witnessed Plaintiff run away in tears. *Id.*

Sabah also routinely hugged Plaintiff approximately five times per week from July through September 2012, moaning as he hugged her. PSOF, ¶ 17. Furthermore, Sabah pressed himself against Plaintiff's breasts, commented that they were "really firm," and moaned in addition to complimenting her hips. *Id.* Furthermore, Sabah asked Plaintiff regarding whether her breasts were real and what size they were. *Id.* Twice during Plaintiff's employment on the Lot, Sabah asked Plaintiff if she like small, medium, or large penises. *Id.* Five separate times, Sabah asked Plaintiff out on dates from July through September 2012, once promising a night she would never forget. *Id.* Multiple times, Sabah also asked for Plaintiff's personal telephone number and whether Plaintiff had a boyfriend. *Id.*

Plaintiff did not remain idle as Sabah engaged in offensive and unwelcome conduct against her; she complained to Sabah and Stratosphere. From June 18, 2012 through September 2012, Plaintiff opposed Sabah's conduct and informed him that he should stop his actions immediately. PSOF, ¶ 19. On June 22, 2012, Plaintiff called Rebecca Feltner ("Feltner") to complain about Sabah's sexually offensive conduct and left a voicemail. PSOF, ¶ 21. Feltner did not do anything in response to Plaintiff's voicemail. *Id.* Plaintiff also complained to Stratosphere's human resources team in September 2012. PSOF, ¶¶ 24.

In September 2012, with Sabah's input, Stratosphere began considering demoting Plaintiff from Project Supervisor to Team Lead, but left open the possibility of retraining Plaintiff. PSOF, ¶¶ 25, 28. Prior to September 22, 2012, Stratosphere was still considering the

possibility of retraining Plaintiff. *Id.* However, on September 22, 2012, Sabah again approached Plaintiff and inquired about her personal life. PSOF, ¶ 26. Frustrated that nothing had been done to curtail Sabah's conduct, Plaintiff opposed Sabah's advance by loudly stating to him that he needed to cease his behavior, stop discussing her personal life, and to stop touching her. *Id.* The next day, Sabah informed Stratosphere that retraining Plaintiff would be insufficient, and that Plaintiff should be demoted. PSOF, ¶¶28, 30. On September 25, 2012, Sabah requested that Plaintiff not work on the Lot. PSOF, ¶ 31. Complying with Sabah's request, Stratosphere removed Plaintiff from the Lot but did initially did not provide a reason for such removal. PSOF, ¶ 32; Dkt. 83, ¶ 53. Upon Plaintiff's removal from the Lot, Stratosphere did not have any other positions available for her. PSOF, ¶ 35. Nevertheless, Plaintiff complied with Stratosphere's call-in procedures concerning another position elsewhere. PSOF, ¶ 35.

On approximately October 4, 2012, Plaintiff complained to Stuart Taylor ("Taylor"), Stratosphere's Project Manager, about Sabah's offensive sexual conduct. PSOF, ¶ 34. Taylor did not take any steps to report or remedy Plaintiff's complaints of sexual harassment. *Id.* In November 2012, Plaintiff was formally terminated. PSOF, ¶ 36.

## Legal Standard

Summary judgment is appropriate only, when viewing all facts in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact such that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. *Courtney v. Biosound, Inc.* 42 F.3d 414, 423 (7th Cir. 1994).

<u>Argument</u>

**I.      Plaintiff was Employed by FCA**

Plaintiff maintained a joint employment relationship with FCA and Stratosphere.  In light of the fact that FCA was one of Plaintiff's employers during the time that Plaintiff worked on the Lot, FCA is liable for the harassment, discrimination, and retaliation against her.  PSOF, ¶¶ 12-13; 42 U.S.C. 2000e-2(a)(1); 775 ILCS 5/2-102(A); 775 ILCS 5/2-102(D); 775 ILCS 5/6-101(A); s*ee Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 700 (7th Cir. 2015) (noting that a plaintiff may have multiple employers for purposes of Title VII liability).  Courts look to five factors to determine whether an employment relationship exists: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.  *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-379 (7th Cir. 1991).  The ability of an employer to control an individual is the most important factor.  *Id.* at 378.  The identity of one's employer is a legal conclusion.  *EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998).

**A.      FCA Controlled Plaintiff's Work**

With respect to this "most important" factor of control, it is clear that FCA was Plaintiff's employer on the Lot.  *Knight*, 950 F.3d at 378.  In all material facets of Plaintiff's employment, FCA (through its yard manager Sabah) controlled Plaintiff.  First, Sabah admitted that he supervised Plaintiff's work and provided Plaintiff with instructions on how to perform her work. PSOF, ¶ 6.  Second, Sabah trained Plaintiff in her work duties on the Lot.  PSOF, ¶12.  Third,

Sabah occasionally assigned shifts to Plaintiff on the Lot. PSOF, ¶ 12. Fourth, it was Sabah's responsibility to ensure that FCA's inspection procedures were followed on the Lot. PSOF, ¶ 11. Fifth, Sabah inspected vehicles at random to ensure that they were inspected properly. Dkt. 86, ¶ 54. Sixth, Sabah provided input into Stratosphere personnel decisions (including Plaintiff's demotion and removal from the Lot), and Sabah's input was *always* followed because Stratosphere had a practice to comply with all customer requests. PSOF, ¶¶ 14-15.

The aforesaid facts distinguish this case from *Love*, relied upon by FCA. Dkt. 85, pp. 5-7. In *Love*, the plaintiff did not receive instructions from the putative employer; in the present case, Plaintiff received instructions from Sabah. *Love*, 779 F.3d at 702; PSOF, ¶ 6. In *Love*, the putative employer could only inform the direct employer of unsatisfactory performance; in the present case, Sabah could provide input into Stratosphere's personnel decisions which would invariably be followed by Stratosphere. *Love*, 779 F.3d at 702; PSOF, ¶¶ 14-15. These facts weigh in favor in finding that FCA controlled Plaintiff on the Lot.

As to the "key powers" of hiring and firing, it must be noted that Sabah's input into Stratosphere personnel decisions and Stratosphere's practice of following customer input combine to give these "key powers" to Sabah and, by extension, FCA. PSOF, ¶¶ 14-15; *see Love*, 779 F.3d at 703, *citing EEOC v. Illinois*, 69 F.3d 167, 171-172 (7th Cir. 1995) ("Were [the putative employer] pulling the strings in the background – telling the [direct employer] whom to hire and fire and how much to pay them – a point would soon be reached at which the [putative employer] was the de facto employer and the [direct employer] merely its agents."). With Stratosphere's seemingly blind following of Sabah's personnel input, Stratosphere was simply acting as a mouthpiece for Sabah's wishes. PSOF, ¶¶ 14-15. Through his personnel input,

Sabah was "pulling [Stratosphere's] strings in the background." *EEOC v. Illinois*, 60 F.3d 167, 171-172 (7th Cir. 1995); PSOF, ¶¶ 13-15, 28-32. FCA was one of Plaintiff's employers.

The case of *Worth v. Tyer*, 276 F.3d 249 (7th Cir. 2001), is applicable to the present case. Therein, the Seventh Circuit affirmed the denial of the defendants' post-trial motions concerning their supposed lack of employment relationship with the plaintiff. In affirming the district court, the Seventh Circuit commented on the importance of the following facts: the plaintiff's work schedule, which was set by the putative employer; the putative employer inspected the plaintiff's work product; and the training provided by the putative employer. *Id.* at 263. In viewing this evidence, the Seventh Circuit ruled that there was sufficient evidence to support a finding that the putative employer was the plaintiff's de facto employer. *Id.* With FCA and Plaintiff, each of the aforesaid factors is present, supporting a finding that there is a genuine issue of material fact as to whether FCA was Plaintiff's employer. PSOF, ¶¶ 6, 11-15, 28-32.

**B.      FCA Trained Plaintiff**

Sabah provided training and instructions to Plaintiff on the Lot, again supporting a finding that Plaintiff was employed by FCA. PSOF, ¶¶ 6, 12. FCA's reliance on *Love* regarding this point is similarly misplaced. In *Love*, the Court only evaluated whether a safety meeting qualified as the training articulated by the second *Knight* factor. *Love*, 779 F.3d at 704. The Court further noted that "it was [the plaintiff's] application of those skills that mattered in determining whether an employer-employee relationship existed." *Id.* (citations omitted).

Here, Plaintiff was trained by Sabah and FCA on far more than safety in the workplace. Rather, Sabah supervised Plaintiff, trained Plaintiff on how to perform her job duties, and provided her with instructions on how to perform her job. PSOF, ¶¶ 6 (noting Sabah's admission in this regard), 12. This type of training creates a genuine issue of material fact as to whether an

employment relationship existed between FCA and Plaintiff, and FCA's Motion should be denied. *See Worth*, 276 F.3d at 263 (further holding that previous experience and skills in the relevant job do not necessarily cut against a finding of an employment relationship).

## II.     FCA is Liable for the Sexual Harassment against Plaintiff

Under both the Illinois Human Rights Act ("IHRA") and Title VII, there is a genuine issue of material fact regarding Plaintiff's sexual harassment claims against FCA.  "In order for a plaintiff to prevail on a sexual harassment claim, she must demonstrate that: (1) she was subject to unwanted harassment; (2) the harassment was based on sex; (3) the harassment created an intimidating, hostile or offensive working environment; and (4) there is a basis for employer liability." *Jarvis v. Sigmatron International Inc.*, 223 F.Supp.2d 981, 984 (N.D. Ill. 2002).  FCA only argues that there is no basis for employer liability, so any other arguments that it could have made regarding Plaintiff's sexual harassment claim are waived.  *Dobrzeniecki v. Salisbury*, 2013 U.S. Dist. LEXIS 17841, at **10-11 (N.D. Ill. 2013); *see also U.S. v. Elst*, 579 F.3d. 740, 747 (7th Cir. 2010).  Whether FCA is liable for sexual harassment requires differing analysis between the IHRA and Title VII.

### A.     There is a Basis for Employer Liability under the IHRA

There is a basis for employer liability against FCA under the IHRA because it is strictly liable for Sabah's conduct.  Where a plaintiff's harasser is a supervisor, the employer is strictly liable for that conduct under the IHRA.  *Sangamon County Sheriff's Department v. Illinois Human Rights Commission*, 233 Ill.2d 125, 140 (2009).  Furthermore, the harasser need not be *the plaintiff's* supervisor.  *See id.*  Because Sabah was a supervisor for purposes of the IHRA, FCA is strictly liable for his sexually harassing conduct against Plaintiff.

The Illinois Human Rights Commission ("Commission"), an administrative adjudicative body created by the IHRA, has addressed the issue of who constitutes a supervisor specifically under that statute. 775 ILCS 5/8-101. In *Cunningham v. Wal-Mart Stores, Inc.*, 1998 ILHUM LEXIS 150 (Charge No. 1992CF0496, ALS No. 9048, April 16, 1998), the Commission found a receiving manager to be a receiving clerk's supervisor because he had the authority to direct the clerks in their work and the clerks were expected to follow his directions. *Id.* at *23. An IHRA supervisor is simply someone who is responsible for the day-today functioning of the department and who directs employees. *Id.* at **21-23. A supervisor under the IHRA does not need the authority to hire, fire, demote, or discipline employees. *Id.*

There is a genuine issue of material fact as to whether Sabah was a supervisor under the IHRA. As stated above,[3] Sabah admitted that he supervised Plaintiff's work and provided Plaintiff with instructions on how to perform her work. PSOF, ¶ 6. Sabah trained Plaintiff in her work duties on the Lot, Sabah occasionally assigned shifts to Plaintiff, it was Sabah's job to ensure that FCA's inspection procedures were followed, Sabah checked Plaintiff's work product, and Sabah provided input into personnel decisions affecting Plaintiff. PSOF, ¶¶ 11-12, 14-15; Dkt. 86, ¶ 54. At the very least, there is a genuine issue of material fact as to whether Sabah was Plaintiff's supervisor under the IHRA. Thus, FCA is strictly liable for sexual harassment, and the Motion must be denied.[4]

### B.     There is a Basis for Employer Liability under Title VII

Moreover, there is a genuine issue of material fact as to whether there is a basis for employer liability for sexual harassment against FCA under Title VII. Given that Sabah was a supervisor for purposes of Title VII, FCA is strictly liable for Sabah's sexual harassment against

---

[3] *See* Section I.A., *supra.*
[4] Even if Sabah were not a supervisor for purposes of the IHRA, FCA would still be liable for sexual harassment under the IHRA because it was negligent in discovering and remedying sexual harassment. *See* Section II.B., *infra.*

Plaintiff. *Parkins v. Civil Constructors*, 163 F.3d 1027, 1032 (7th Cir. 1998). Even setting aside the supervisory considerations referenced above,[5] Sabah was a supervisor under Title VII because he was pulling Stratosphere's strings in its personnel decisions. *Vance v. Ball State University*, 133 S.Ct. 2434, 2447 (2012); *EEOC v. Illinois*, 60 F.3d 167, 171-172 (7th Cir. 1995); PSOF, ¶¶ 13-15, 28-32. FCA is strictly liable for sexual harassment under Title VII as well.

Alternatively, FCA was negligent in discovering and remedying harassment. "Notice that is sufficient to trigger employer liability must be given to either someone with authority to take corrective action or, at a minimum, someone who could reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it." *Lambert v. Peri Formworks Systems, Inc.*, 723 F.3d 863, 866 (7th Cir. 2013). Under FCA's own sexual harassment policy, Sabah, as a yard manager, was eligible to receive complaints of sexual harassment. PSOF, ¶ 38. FCA's sexual harassment policy permits individuals to report harassers to "management." *Id.* FCA ignores the fact that Plaintiff complained to Sabah numerous times throughout her employment on the Lot, but Sabah did nothing to report these complaints. PSOF, ¶¶ 6, 19. Sabah was reasonably expected to refer Plaintiff's complaint to other FCA employees. *Lambert*, 723 F.3d at 866; PSOF, ¶ 38. Failing to do so was negligent, and there is a genuine issue of material fact as to whether there is a basis for employer liability against FCA regarding Plaintiff's sexual harassment claim. *See EEOC v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 435 (7th Cir. 2012) (holding that the mere creation of a policy does not shield an employer from liability). FCA's Motion should be denied.

## III.    Plaintiff was Subjected to Sex Discrimination

FCA's only argument as to why Plaintiff's sex discrimination should be dismissed relies on the testimony of a layperson concerning a legal conclusion, which is not admissible and

---

[5] *See* Section II.A., *supra*.

cannot be considered for summary judgment. Dkt. 85, p. 12; *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 337 (N.D. Ill. 2008). FCA has waived all other arguments concerning Plaintiff's sex discrimination claim. *Dobrzeniecki*, 2013 U.S. Dist. LEXIS at **10-11; *see also Elst*, 579 F.3d. at 747 (7th Cir. 2010).

Nevertheless, there are still genuine issues of material fact concerning Plaintiff's sex discrimination claim. Plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated individuals. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Once Plaintiff meets each of these elements, she must prove that FCA's stated reason for an adverse employment action, if any, is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973). FCA cannot dispute the first element. *Schneider v. Northwestern University*, 925 F.Supp. 1347, 1368 (N.D. Ill. 1996). FCA has also not articulated any legitimate reason in response to Plaintiff's sex discrimination claim, thereby obviating any discussion of pretext. *McDonnell Douglas Corp.* 411 U.S. at 804-805.

### A.  Plaintiff Suffered an Adverse Employment Action

FCA subjected Plaintiff to an adverse employment action. In a discrimination claim, a "cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 839 (7th Cir. 2008). Where continued harassment and ostracism results in a demotion or reduced compensation, such harassment and ostracism constitutes an adverse employment action. *Smith v. Farmstand*, 2014 U.S. Dist. LEXIS 169237 (N.D. Ill. 2014); *Knox v. Indiana*,

11

93 F.3d 1327 (7th Cir. 1996); *Parkins v. Civil Constructors*, 163 F.3d 1027 (7th Cir. 1998). Such is the case here. The harassment against Plaintiff interfered with her work performance so severely such that her demotion, removal, and wage reduction were a direct consequence of it. PSOF, ¶¶ 23, 30-32, 35; Dkt. 83, ¶¶ 44-51.[6] Therefore, the harassment that she suffered qualifies as an adverse employment action.

### B. Plaintiff Met FCA's Legitimate Employment Expectations

In light of the fact that Plaintiff's work performance allegedly suffered due to Sabah's ongoing harassment, the second element of Plaintiff's prima facie sex discrimination claim is satisfied. PSOF, ¶ 23. "[A]n employer cannot use an employee's diminished work performance as a legitimate basis for removal where the diminution was the direct result of the employer's discriminatory behavior." *Weiss v. United States*, 595 F. Supp. 1050, 1057 (E.D.V.A. 1984); *see also Shrout v. Black Clawson Co.*, 689 F. Supp. 774, 781 (S.D. Ohio 1988), *citing Moffett v. Gene B. Glick Co.*, 621 F.Supp. 244 (N.D. Ind. 1985). As such, there is a genuine issue of material fact as to whether Plaintiff can meet the second element of sex discrimination.

### C. Plaintiff was Treated Less Favorably than Similarly Situated Male Employees

Male employees were not subjected to the same harassment that Plaintiff endured. FCA has averred throughout this litigation that it is an equal opportunity employer which does not discriminate against anyone. PSOF, ¶ 38. Effectively, this operates as a denial that males were subjected to the same harassment and ostracism as Plaintiff. Sabah and FCA created different working conditions for Plaintiff versus similarly situated males, and there is a genuine issue of material fact as to Plaintiff's sex discrimination claim.

---

[6] Plaintiff's removal was also a direct result of the combination of Sabah's input into Stratosphere personnel decisions and Stratosphere's practice to comply with customer requests. PSOF, ¶¶14-15.

## IV.     Plaintiff was Subjected to Retaliation

There is a genuine issue of material fact as to whether Plaintiff was retaliated against by FCA.  To establish retaliation, Plaintiff must show that (1) she engaged in a protected activity; (2) FCA committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act.  *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).  Because FCA has not articulated a legitimate reason for an adverse employment action, any discussion of pretext is unnecessary.  *McDonnell Douglas Corp.*, 411 U.S. at 804-805.

### A.     Plaintiff Engaged in Protected Activities Prior to an Adverse Employment Action

Plaintiff engaged in a protected activity prior to any adverse employment action. Specifically, Plaintiff complained to Sabah throughout her employment on the Lot, with the most intense complaint occurring on September 22, 2012.  PSOF, ¶¶ 19, 26; *Benitez v. Am. Std. Circuits, Inc.*, 68 F.Supp.2d 745, 761 (N.D. Ill. 2010) (holding that protected activities range from formal complaints to voicing complaints to supervisors).  FCA ignores this fact.  Dkt. 85, pp. 12-13.  The September 22, 2012 complaint occurred shortly *prior* to Plaintiff's September 26, 2012 removal from the Lot and associated demotions and wage reductions, thus leaving a genuine issue of material fact.  PSOF, ¶¶ 2, 22, 29-32, 35.

### B.     FCA Committed Adverse Employment Actions against Plaintiff

FCA's actions against Plaintiff would have dissuaded a reasonable employee from complaining of sexual harassment.  An "adverse employment action" might "dissuade a reasonable worker from making or supporting a charge of discrimination."  *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  There can be no dispute that Plaintiff's removal from the Lot and associated demotion and wage reduction qualify as adverse

13

employment actions. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003); *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 613-614 (7th Cir. 2001).

FCA, however, disputes that it had the authority to take an adverse employment action against Plaintiff, but that position has already been undermined herein. *See* Section I.A., *supra*. As stated above, Sabah was simply pulling Stratosphere's strings in the background. *EEOC v. Illinois*, 69 F.3d 167, 171-172 (7th Cir. 1995); PSOF, ¶¶ 14-15, 28-32. Sabah's input into Plaintiff's removal and demotion constitute adverse employment actions. *Id.*

### C. There is a Causal Nexus Between Plaintiff's Protected Activities and the Adverse Employment Actions

There is a genuine issue of material fact as to whether Plaintiff's protected activities caused her adverse employment actions. Suspicious timing is evidence of causation. *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). On September 22, 2012, Plaintiff made her most intense opposition to sexual harassment directly to Sabah in the workplace. PSOF, ¶ 26. On the immediately following day, Stratosphere, with Sabah's input, altered its decision to retrain Plaintiff and instead opted to remove her from the Lot, which resulted in a de facto demotion. PSOF, ¶ 28. This is sufficient to establish causation. *See Casna v City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (leaving question of causation to the jury where the plaintiff was recommended for termination one day after protected activity). FCA's Motion pertaining to Plaintiff's retaliation claim should be denied.

## V. FCA is Liable for Battery

There is a genuine issue of material fact as to whether FCA is liable for the battery committed by Sabah. Employers may be liable for the intentional torts of its employees if those actions are carried out in the scope of employment. *Volling v. Antioch Rescue Squad,* 999 F.Supp.2d 991, 1003-1004 (N.D. Ill. 2013). "[C]onduct is outside the scope of employment if it

is different in kind from that authorized, far beyond the authorized time or space limits, *or* too little actuated by a purpose to serve the master." *Id.* at 1004 (internal quotations omitted) (emphasis added). In *Thomas v. Comcast of Chicago, Inc.*, 2012 U.S. Dist. LEXIS 109271, **27-28 (N.D. Ill. 2012), the court held that sexual battery committed against the plaintiff in the workplace and during work hours was sufficiently in the scope of the offender's employment to preclude summary judgment on the issue. All of Sabah's conduct occurred in the workplace and during work hours. PSOF, ¶¶ 17, 20, 23. A reasonable jury could conclude that Sabah's conduct occurred in the scope of his employment. *Thomas*, 2012 U.S. Dist. LEXIS at **27-28. FCA's Motion should be denied.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny FCA's Motion for Summary Judgment.

Respectfully Submitted,
Michele Nischan,

/s/ Franklin Z. Wolf
One of Plaintiff's Attorneys
Uche O. Asonye – 6209522
Franklin Z. Wolf – 6301208
ASONYE & ASSOCIATES
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110 (ph)
(312) 795-9114 (f)

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 19th day of June, 2015, served a true and accurate copy of the foregoing **Plaintiff's Response to FCA's Motion for Summary Judgment and Memorandum of Law** upon the following by electronically filing it with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**STRATOSPHERE QUALITY LLC,**
**Defendant**

*Lead Counsel for Stratosphere Quality, LLC:*
D. Rusty Denton
Katherine G. Erdel
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317) 635-8900 Phone
(317) 236-9907 Fax
ddenton@bgdlegal.com
kerdel@bgdlegal.com

*Local Counsel for Stratosphere Quality, LLC:*
Jennifer L. Johnson
Eileen Caver
HINSHAW & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
(815) 490-4900 Phone
(815) 490-4901 Fax
jjohnson@hinshawlaw.com
ecaver@hinshawlaw.com

**CHRYSLER GROUP LLC,**
**Defendant**

*Lead Counsel for Chrysler Group LLC:*
Charlie J. Harris, Jr.
Julia D. Kitsmiller
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, MO 64112
(812) 756-0700 Phone
(812) 756-3700 Fax
charlie@sbhlaw.com
julia@sbhlaw.com

*Local Counsel for Chrysler Group LLC:*
Roberta L. Holzwarth
Jocelyn Lindsay Koch
HOLMSTROM & KENNEDY
800 N. Church St.
Rockford, Illinois 61105
(815) 962-7071 (fax)
(815)962-7181 (fax)

**ABBAS SABAH**
**Defendant**

*Counsel for Abbas Sabah*
Matthew P. Barrette
SULLIVAN HINCKS & CONWAY
120 W. 22nd Street, Suite 100
Oak Brook, Illinois 60523
Ph. (630) 573-5021
Fax: (630) 573-5130
mattbarrette@shlawfirm.com


Respectfully Submitted,
Michele Nischan,


/s/ Franklin Z. Wolf
One of Plaintiff's Attorneys
Uche O. Asonye – 6209522
Franklin Z. Wolf – 6301208
ASONYE & ASSOCIATES
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110 (ph)
(312) 795-9114 (f)